In the Matter of EDWARD B. GOULD, an Incompetent Person.
NORMAN J. GOULD, Appellant; CHARLES F. HAMMOND, Committee of the Incompetent, and WILMA E. GOULD, Wife of the Incompetent, Respondents.

Fourth Department, May 19, 1939.

*Alfred L. Becker,* for the appellant.

*Earl W. Murray,* for the respondent Wilma E. Gould.

*Joseph J. Doyle,* for the respondent committee.

DOWLING, J.   On May 13, 1931, Edward B. Gould was committed to Brigham Hall Hospital at Canandaigua, N. Y., an institution for the insane, by the order of the county judge of Ontario county. On May 16, 1931, Norman J. Gould, a brother of Edward B. Gould, petitioned the County Court of Seneca county to have said Edward B. Gould declared an incompetent person.   The matter was brought to trial before a jury in June, 1931.   The jury found him competent.   The court set the verdict aside and ordered the matter retried before a jury on January 4, 1932.

On the 17th day of July, 1931, Norman J. Gould petitioned the County Court of Seneca county for an order appointing a special guardian for Edward B. Gould pending the disposition of the proceeding for the appointment of a committee of his estate, " with power to protect his rights and interests in this proceeding and to take and receive any and all current funds and income which are now or may hereafter and until the appointment of a committee herein be available or on deposit to his credit or to the credit of his said trustee in any banking institution and to apply the same in such manner as may be ordered by the court; * * * that such special guardian when appointed be authorized and directed to apply such funds in the first instance and in priority to any other payment therefrom to the payment and discharge of the said Edward B. Gould's reasonable obligations incurred and hereafter to be incurred for medical and hospital care in Brigham Hall Hospital."   Attached to and made a part of the petition was a schedule of debts owing by said Edward B. Gould. Item 5 of this schedule was as follows: " Miscellaneous obligations: Approximate amount advanced by Norman J. Gould and Seabury

S. Gould account Edward B. Gould at latter's request for various purposes at various times, $12,000.00." The court entertained the application and took proof relative to the then debts of Edward B. Gould. No proof was offered relative to the claim of Norman J. or Seabury S. Gould. The learned county judge wrote a memorandum to the effect that the court, in view of the fact that Edward B. Gould had been committed to an insane asylum and was in fact incompetent to manage his affairs, had authority to administer his estate pending the appointment of a committee and to appoint a special guardian to aid the court in so doing. The court made a decision in writing to the effect the court would appoint James M. Ryan, Esq., as special guardian and as a temporary officer of the court to look after the property of Edward B. Gould pending the disposition of the incompetency proceeding and that he would authorize him to receive the income from the estate of Edward B. Gould and empower him to borrow certain moneys to pay the pressing debts of said Edward B. Gould. On July 28, 1931, the court made an order appointing said James M. Ryan and empowered him " To receive any and all income from the Auburn Trust Company of Auburn, New York, to which the said Edward B. Gould shall be entitled, and any other income to which he shall be entitled, pending the termination of the proceeding for the appointment of a Committee of the Person and Property of the said Edward B. Gould, and to apply and pay the said income, *first*, for the care and maintenance of the said Edward B. Gould, or any medical care or attention which he may require; *second*, to apply any remaining portion of the said income for the support of the family of said Edward B. Gould and in payment of any award for any alimony and counsel fee that may have been made in a divorce action between Edward B. Gould and Wilma E. Gould; *third*, to apply and pay any portion of said income remaining toward payment of such other debts of the said Edward B. Gould as in the judgment of said Special Guardian shall be just and proper claims against his estate, and the payment of which shall be for the best interests of his estate, and the conservation of his property pending this proceeding." The court further ordered that said special guardian might borrow $4,000 " for the purpose of making payments pursuant to this order."

On January 4, 1932, the incompetency proceeding was retried and the jury returned a verdict declaring Edward B. Gould to be an incompetent person. On January 12, 1932, on notice to all interested parties, the court made an order confirming the findings of the jury, declaring Edward B. Gould to be an incompetent person, and appointing James M. Ryan the committee

of the person and property of Edward B. Gould. James M. Ryan accepted the appointment and entered upon the discharge of his duties. On or about May 7, 1932, James M. Ryan petitioned the County Court of Seneca county for leave to file and settle his accounts as special guardian and committee of the estate of Edward B. Gould. Attached to the petition was a copy of his account in both capacities. The court made an order permitting him to account and directing the filing of his account and directing that notice of the presentation of said account be given to all interested parties. Norman J. Gould, on May 11, 1932, executed a waiver as follows: " I, Norman J. Gould, hereby waive the issue and service of citation in the above entitled matter, and consent that said matter proceed to a decree without any further or any formal notice to me whatsoever." Schedule C of the account filed contained a list of certain creditors of the estate of the incompetent. The names of Norman J. and Seabury S. Gould do not appear on Schedule C. The committee made an affidavit in part as follows: " and that he does not know of any error in said account or anything omitted therefrom which may in anywise prejudice the right of any party interested in the estate of the said incompetent." The court made an order on the 17th of May, 1932, settling the account of the special guardian and committee as presented and discharging him from further liability and responsibility both as special guardian and as committee of the person and estate of Edward B. Gould. In this proceeding the court did not consider or pass upon the claim of this appellant. In fact the court did not pass upon in this proceeding the validity of any of the unpaid claims nor has the validity of said claims ever been determined by the committee or by the court.

On the 6th of June, 1932, on notice to all interested parties, the court made an order appointing Charles F. Hammond as successor committee to James M. Ryan. The preamble of said .order contains a reference to the order of December 29, 1931, made following the proceeding wherein James M. Ryan had been appointed the special guardian of Edward B. Gould and before Edward B. Gould had been declared to be an incompetent person. The order of June 6, 1932, contained the following provision: " It is Further Ordered that the said Order hereinbefore referred to in regard to the application of the funds of said Estate and dated December 29th, 1931, and the term thereof shall apply to and bind the said Committee from the time of his qualification and entering upon the discharge of his duties as such Committee, said order being in all respects confirmed." Mr. Hammond promptly qualified as com-

mittee. He has never had his accounts judicially settled as far as the record discloses.

On the 14th of October, 1937, Charles F. Hammond, as committee of Edward B. Gould, presented a petition to the Seneca County Court, pursuant to section 250 of article 9 of the Debtor and Creditor Law, asking for an order directing all persons having claims against the estate of his incompetent to present the same to him as committee on November 4, 1937. The committee alleged that he was making the application for the reason that a certain creditor was pressing him for payment of its claim because of the fact that the Statute of Limitations was about to run and that the committee felt that there might be many other claimants in the same situation. Notice of the application was given to Norman J. Gould. At the suggestion of the committee and his counsel, Norman J. Gould, on or about December 17, 1937, presented to the committee a verified bill of particulars of the claim listed in " Schedule A " which was attached to his petition for the appointment of a special guardian and verified on July 17, 1931. Seabury S. Gould died some years ago. His representatives did not join in the bill of particulars. The committee reserved his right to challenge the competency of the bill of particulars. Norman J. Gould and the representative of the estate of Seabury J. Gould filed no claims as permitted by the order of October 14, 1937, Norman J. Gould taking the position that he had filed and presented his claim at the time that he made the petition for the appointment of a special guardian of said incompetent on July 28, 1931, and that it was not necessary to refile the same; that the court in the orders of July 28, 1931, January 12, 1932, and June 6, 1932, had in effect approved of the claim and had authorized the committee in his discretion to pay the same and that the committee had never formally acted upon said claims. The committee of the estate took the position that the claim had never been presented to either committee and that it was barred by the Statute of Limitations, and that the bill of particulars did not and could not revive it. Without taking any testimony relative to the presentation of the claim, the court, on the 4th of October, 1938, made an order in part as follows: " Ordered, Adjudged and Decreed that the said alleged claim of Norman J. Gould was not duly or properly filed at any time with the Committee or Special Guardian of the person and property of the incompetent herein," and " that said alleged claim did not accrue within the six years next preceding the commencement of the proceedings herein now pending before this Court, and that therefore, said claim, if any exists, is barred by the Statute of Limitations." From this order Norman J. Gould appeals.

The committee does not dispute the fact that Norman J. Gould had advanced to the incompetent the amount as claimed by him. There is nothing in the record to indicate that James M. Ryan did not consider that the claim had been duly presented to him as special guardian and as committee except an unsworn statement by counsel for the present committee to the effect that Mr. Ryan had advised him that Norman J. and Seabury S. Gould had presented no claim to him either as special guardian or as committee of Edward B. Gould. The fact that Norman J. Gould waived service of citation and consented to the entry of a decree settling the accounts of James M. Ryan as special guardian and as committee of the said incompetent does not establish that Norman J. Gould did not in effect present his claim to Mr. Ryan both as special guardian and as committee. There is no proof that Norman J. Gould knew or understood that his claim was not listed in the Ryan account. His claim, in any event, was not adjudicated in that proceeding. (*Matter of Howe*, 255 App. Div. 230, 232.) There is no proof that either committee ever rejected his claim or called it in question until the institution of this proceeding. Their silence might be deemed a substantial allowance of the claim as a debt to be paid in due course of administration. (*Lambert* v. *Craft*, 98 N. Y. 342, 349, 350.)

The Chancery Court in England had the whole jurisdiction in regard to idiots and lunatics. In cases where it was necessary that court would appoint a temporary guardian or receiver of the alleged incompetent's property until the fact of lunacy had been determined. (*Matter of Wendell*, 1 Johns. Ch. 600; *Matter of Payn*, 8 How. Pr. 220, 221; 107 A. L. R. 1394–1400.) Our Supreme Court has all the power that was exercised by the Court of Chancery in England on July 4, 1776. (Civ. Prac. Act, § 64.) The County Courts have concurrent power with the Supreme Court over such persons and their estates. (Civ. Prac. Act, § 67, subd. 4; §§ 69, 1356.) The court exercising jurisdiction must preserve the property of such persons. (Civ. Prac. Act, § 1357.) While the property of the alleged incompetent may be preserved by the court pending the disposition of a lunacy proceeding it cannot be disposed of until a committee has been appointed. (*Finch* v. *Goldstein*, 245 N. Y. 300, 303.) This being so, we may construe the order appointing Mr. Ryan as special guardian as though it was an order appointing him a temporary guardian or receiver. (See *Matter of Wendell, supra,* p. 601.) Hence this order was not wholly void.

In the preamble of the order appealed from there is a recital that until 1938 " there was neither surplus income nor liquidated

principal available for the payment of claims against the estate, and the special guardian, the committees and the court, respectively, from time to time, so informed inquiring creditors, other than Norman J. Gould and Seabury S. Gould (the facts being known to them) and informed such creditors that their claims would have attention as soon as funds were available for the payment of just claims." Is it not fair to assume that this is the reason why Norman J. Gould did not press his claim rather than that he expected to be paid by what he was to receive under the trust agreement, which was invalidated in 1936. If he were relying on the trust agreement he certainly would have prosecuted his claim as soon as that instrument was invalidated. The court and the committee in effect promised the creditors of the incompetent that their claims would have attention if they would wait for payment until funds were available. There certainly was no intention to treat the Goulds differently from the other creditors of the incompetent because their claims were " just claims " within the recitation of the preamble.

The present proceeding is one to ascertain the just claims of the creditors to which the court and the committee promised to give attention as soon as funds were available and they were not available until after this proceeding had been instituted. So far as the proof goes the creditors acquiesced and presented no claims until the institution of this proceeding. The effect of this action on the part of the committee, which was sanctioned by the county judge, was to postpone the running of the Statute of Limitations. True, the agreement to postpone the running of the statute was not in writing but it was fully performed by the Goulds and the other creditors. In *Watertown National Bank* v. *Bagley* (134 App. Div. 831) this court said, in reference to postponing the operation of the Statute of Limitations: " The parties may extend or shorten the period if the contract is founded upon a good consideration and is reasonable." The consideration in this instance was adequate. Had the creditors sooner pressed their claims irreparable injury might have been done by sacrificing the assets of the estate to pay claims. The court had the power, in order to protect the estate, to withhold permission from creditors who might be minded to enforce their claims (*Smith* v. *Keteltas*, 27 App. Div. 279, 280; *Grant* v. *Humbert*, 114 id. 462, 465), and in effect the court did withhold its permission from the Goulds and other creditors.

Under the circumstances it does not matter whether we treat the Gould claim as presented when the special guardian was appointed committee or as presented when Mr. Gould served his

verified bill of particulars, since the statute had not begun to run against it until the committee instituted this proceeding in October, 1937. The implied agreement of the committee to adjudicate the claims as soon as the estate was in funds served to postpone the running of the statute and he is estopped on equitable principles from setting up the statute as a bar. (*Matter of Williams,* 121 Misc. 54, 56; *State Loan & Trust Co.* v. *Cochran,* 130 Cal. 245, 251, 253; 62 P. 466; *Matter of Miles,* 170 N. Y. 75, 81, 82; *O' Neil Supply Co.* v. *Petroleum H. & P. Co.,* 280 id. 50.)

Under the circumstances of this record we think the learned court below was in error in holding that the Gould claim was barred by the Statute of Limitations. The claim of Norman J. Gould is unliquidated. Hence it should be remitted to the County Court of Seneca county for adjudication.

The order appealed from should be reversed and the matter should be remitted to the County Court of Seneca county with directions to adjudicate the claim of Norman J. Gould.

All concur, except SEARS, P. J., and CUNNINGHAM, J., who dissent and vote for affirmance in the following memorandum: We find nothing in this record to toll the running of the Statute of Limitations. The latest date shown in the record of an advance to the incompetent was July 31, 1931. Nothing occurred thereafter looking toward the enforcement of the claim until the presentation of the bill of particulars dated December 17, 1937. The petition of Norman J. Gould, dated July 17, 1931, with the schedule attached, was not the presentation of a claim and even if it were so considered, it is not recognized or adjudicated to be a claim under the order of July 28, 1931, which appointed James M. Ryan special guardian and purported to give him authority to pay from income of a trust fund debts of Edward B. Gould as in the judgment of the special guardian should be just and proper claims against his estate. On a hearing held on July 28, 1931, no proof was offered as to any claim of Norman J. Gould. We are strengthened in our opinion by the accounting finally rendered by James M. Ryan as committee and guardian and the waiver in connection therewith of Norman J. Gould, dated May 11, 1932, inasmuch as in the accounting of James M. Ryan no mention was made of the claim of Norman J. Gould which he now seeks to enforce. Present — SEARS, P. J., LEWIS, CUNNINGHAM, TAYLOR and DOWLING, JJ.

Order reversed on the law, with costs payable out of the estate of the incompetent, and matter remitted to the County Court of Seneca county to adjudicate the claim of the appellant.